# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PETITIONER |
| V. | CASE NO. 4:10-CR-00056 |
| KENNETH KING, ET AL. | DEFENDANTS |

## ORDER

Kenneth King seeks to exclude evidence seized from his vehicle by police during a traffic stop as well as his subsequent confession to a law enforcement agent. King argues that the traffic stop was contrived by police and the evidence obtained during the stop is inadmissible because his consent to search was not an act of free will. He asserts that his confession is likewise inadmissible because it was given inside a law enforcement vehicle and the agent to whom he confessed failed to advise him of his *Miranda* rights. For the reasons stated below, his motion is granted.

The court is called upon to resolve a single dispute stemming from a much larger criminal conspiracy case involving eight defendants. The present matter arose when agents from the Drug Enforcement Administration ("DEA") contacted state police to assist in their ongoing investigation of the defendants in this case. The events relevant to the instant motion to suppress are as follows. On March 3, 2010, DEA Agent Joe Force requested Desoto County Sheriff's Deputy Lee Hutchins to find probable cause to stop Kenneth King's blue Cadillac Escalade, identify the driver, and obtain consent to search the vehicle. Agent Force told Officer Hutchins that King's vehicle likely contained contraband and would be traveling on Highway 61 in Desoto County. Force advised the officer to "make the traffic stop seem normal." Doc. 245 at 22.

1

Hutchins was on duty later that day when King drove past his patrol car in the blue Escalade. According to Hutchins, the truck crossed over the white fog line on the highway and the defendant appeared to be driving too close to the patrol car. After King passed by, Hutchins began following him. The officer noticed that King's license plate bracket covered parts of the bottom of his car tag, in violation of Mississippi state law. At approximately 8:07 p.m., Hutchins pulled the truck over and asked for his identification. The officer returned King's license two minutes after the stop and requested consent to search the vehicle.

With King's consent, Hutchins and two officers on the scene searched the defendant's truck. The officers did not find any incriminating evidence in the vehicle. At the time, Hutchins had a K-9 dog in his patrol car and he used the dog to do a free air search. The officers told King to "hold up" once the dog alerted them to the passenger side of the vehicle. King assured the officers that no drugs were in the truck, but that he had approximately $13,000.00 inside the center console. Officers then recovered the money. At 8:35 p.m., Agents Joe Force and Don Douglas arrived on the scene in a DEA truck. Upon arrival, Agent Douglas asked King to come talk to him. Douglas began questioning the defendant without giving *Miranda* warnings. While inside the agent's truck, King confessed to engaging in criminal activity with Clifton Gales, another defendant in this case. The traffic stop ended at approximately 9:38 p.m., when Hutchins issued King a warning citation. Hutchins claims that he had not planned to issue the citation, but Agent Force or Douglas advised him to do so.

On March 25, 2010, the Grand Jury for the Northern District of Mississippi indicted Kenneth King, Clifton Gales, Anita Allen, and Derrick Reid for conspiracy to possess with intent to distribute powder cocaine. The grand jury subsequently returned two superseding

indictments, adding Cleveland Johnson, Warren Knight, Damion Reid, and Romanda Matthews to the case. At this time, only two defendants remain: Kenneth King and Warren Knight. The other defendants have either pleaded guilty or have been voluntarily dismissed by the government.

King previously moved to suppress his confession and the evidence obtained from the traffic stop. The court conducted a hearing and received additional briefing from the parties before ultimately denying the motion. King now renews his motion to suppress based on two recent Fifth Circuit cases, *United States v. Macias*, 658 F.3d 509 (5th Cir. 2011) and *United States v. Zavala*, 459 Fed. Appx. 429 (5th Cir. 2012). The *Macias* court found that the defendant's Fourth Amendment rights were violated when a state trooper unreasonably extended the duration of an otherwise valid traffic stop. 658 F.3d 509, 522. The court determined that the defendant's consent to search was not freely given because it was closely connected to the unconstitutional detention. *Id.* at 524. In *Zavala*, the court found consent to be invalid because the officer held the defendant for approximately thirty minutes at a traffic stop before requesting his consent to search the vehicle. 459 Fed. Appx. 429, 434-35. The court reasoned that due to the circumstances surrounding the stop, Zavala's consent was not a product of free will. *Id.* at 435.

In the instant motion, King challenges the voluntariness of his consent and confession by arguing that Officer Hutchins never told him he was free to leave. The defendant argues that he never consented to a K-9 search of his vehicle and that his subsequent confession was coerced because he gave it inside the DEA truck. He further contends that the purpose of the stop was not for traffic control, but instead for suspicion that drugs were in his vehicle. The defendant

maintains that his confession should be excluded from evidence because he was not given *Miranda* warnings.

The government argues in response that neither *Zavala* nor *Macias* has any effect on the court's prior ruling because King voluntarily consented to the search of his vehicle within two minutes of the traffic stop. The government asserts there was no illegal detention prior to King giving consent to search. It argues there was only one search because the free air search was merely a continuation of the first search, to which the defendant had already consented. The government maintains that Agent Douglas was not required to *Mirandize* King because he was not in custody at the time he confessed.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Warrantless searches violate the Fourth Amendment unless they fall within an exception to the warrant requirement. *United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996) (citing *United States v. Karo*, 468 U.S. 705, 717 (1984)). There is no Fourth Amendment violation if the defendant voluntarily gives consent to search. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). However, the government must show that a defendant's consent is given freely and voluntarily. *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993). The government bears a heavier burden of proving consent is valid when it is given after the defendant's Fourth Amendment rights have already been violated. *Id*.

4

To determine whether consent is valid, the court looks at the "totality of the circumstances." *Id*. In doing so, the court considers six factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988). Though all of the factors are relevant, none are controlling. *Id*. The court should find consent voluntary when it is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 36 L.Ed 2d 854 (1973).

Officer Hutchins stopped King for careless driving and having an obstructed car tag. Hutchins had already been advised by Agent Force to find probable cause to stop King and search his vehicle. Therefore, it is no surprise that the officer waited on Highway 61 until King's vehicle approached. Although Hutchins observed King swerve over the fog line, he did not immediately stop the vehicle. Rather, he followed the defendant to find another reason to pull him over. After seeing the defendant was not committing any other traffic violations, Hutchins pulled King over and asked to see his license. The officer claims that King attempted to shake his hand when he approached the driver side of the truck. Hutchins found this behavior uncommon. Two minutes later, he asked the defendant for consent to search.

The government argues that the defendant's consent to search is valid because it was given within two minutes of the traffic stop. In looking at the surrounding circumstances, however, it appears that consent was not voluntarily given. As Agent Force requested, Hutchins

5

attempted to make the stop appear normal.  Yet, the record shows that the officers were not interested in any alleged traffic violation when they stopped King.  They knew the defendant was a suspect in an ongoing drug investigation and the officers acted in furtherance of that investigation when they stopped the defendant.  While Hutchins claims King could have left prior to the search, at no time did he or any of the other officers tell the defendant he was free to leave or that he had a right to refuse consent.  Hutchins, two police officers, and a K-9 dog were present when King consented to the search.  The defendant complied with the officer's requests and told them where money was located inside his truck.  Though the defendant was allegedly stopped for violating traffic laws, none of the officers issued a citation prior to asking to search the vehicle.  Instead, they held the defendant at the traffic stop without advising him that he was suspected of criminal activity.  Looking at these factors, it appears King's consent was not the product of an essentially free and unconstrained choice.  An objectively reasonable person in the defendant's position would not have felt free to leave the scene or refuse consent.

A valid traffic stop becomes unlawful when "it is prolonged beyond the time reasonably required to complete its purpose." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed. 2d 842 (2005).  In the present matter, Hutchins did not issue a citation until a DEA agent requested him to do so after the stop ended approximately one and a half hours later.  Hutchins testified that the traffic stop turned into an "investigative detention" once the K-9 alerted officers to the passenger side of the vehicle and at that point, King was no longer free to leave.  While Hutchins has clarified the stages of the defendant's detention to the court, the record does not show that he ever told King that he was under an investigative detention, how long the detention would last, or under what circumstances he would have been free to leave.  The officers

6

unreasonably extended the duration of the stop and any evidence obtained therefrom should be suppressed.

The court now evaluates whether the defendant's confession should also be excluded.

In deciding whether a confession is freely given, the court looks to the "temporal proximity of the arrest and confession, the presence of intervening circumstances...and, particularly, the purpose and flagrancy of the official misconduct..." *United States v. Hernandez*, 670 F.3d 616, 621 (5th Cir. 2012) (quoting *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed. 2d 416 (1975)). Confessions given during a custodial interrogation are generally inadmissible unless the confessing defendant voluntarily waives his rights under *Miranda*. Custody is a term used to describe any circumstances which present a strong danger of coercion. A defendant is in custody if a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed 2d 383 (1995). Custodial interrogations generally occur when a defendant is questioned by law enforcement officers after the defendant has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. *Id.* Any person subjected to custodial interrogation is entitled to the procedural safeguard of Miranda warnings. *Miranda v. Arizona*, 384 U.S. 436, 444, 88 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

The court disagrees with the government's position that King was not in custody at the time he confessed. Agent Douglas asked the defendant to come talk to him inside the DEA truck. He told King that he was not under arrest and "after [they] got through talking [King] was going to be free to go..." Doc. 245 at 77. Based on the agent's testimony, King's freedom of action was deprived because Douglas did not allow him to leave the truck until they "got through

7

talking." Although the government maintains that King was free to go, this position is in direct conflict with Douglas' statements to the defendant. King could not leave until he "talked" to Douglas inside the DEA truck. "Talking" is what *Miranda* is all about. Therefore, the defendant was in custody at the time he confessed and was entitled to *Miranda* warnings. Douglas failed to warn the defendant before beginning the interrogation. He told King about drug arrests in Greenville, Mississippi stemming from the DEA investigation. King then confessed. Since Agent Douglas failed to give *Miranda* warnings to the defendant, the confession must be excluded from evidence.

Based on the foregoing analysis, the defendant's motion to suppress [269] is GRANTED.

This the 4th day of June, 2012.

                                        **/s/ MICHAEL P. MILLS**
                                        **CHIEF JUDGE**
                                        **UNITED STATES DISTRICT COURT**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**